**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 04a0131n.06**
**Filed: November 29, 2004**

**No. 03-2488**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHARLES WINSLOW, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: KEITH, CLAY, and COOK, Circuit Judges.

COOK, Circuit Judge. Defendant Charles Winslow appeals his conviction of using and occupying National Forest land as part of a group of seventy-five or more persons without a special-use permit in violation of 16 U.S.C. § 551 and 36 C.F.R. §§ 251.50(a), 261.10(k), and 261.1b. Winslow argues that the permit requirement, as applied to him, violates the First Amendment, and that he should not have been convicted because the group did not authorize him to sign a permit application. For the reasons that follow, we affirm.

I. Facts and Procedural History

Winslow is a member of the "Rainbow Family of Living Light" ("Rainbow Family"), an informal group that meets over several days each year, often in a National Forest, to do such things

as pray for peace, discuss environmental issues, and socialize. Rainbow Family meetings draw as many as 20,000 people. Winslow was among a group of Rainbow Family members who participated in meetings with a Forest Service officer to discuss site selection and logistics for the Rainbow Family's 2002 gathering in Ottawa National Forest. Winslow refused to sign a permit application for the event, because, he claimed, he had no authorization from the group, and signing on behalf of the rest of the group would be contrary to the group's individualist principles.

Because Winslow refused to sign a permit application, the meeting occurred without Forest Service permission. Winslow was then charged with one count of violating the rules and regulations of the National Forest, in violation of 36 C.F.R. § 261.10(k). After a bench trial, a magistrate judge found Winslow guilty. On appeal, the district court upheld the conviction.

II. The Forest Service's Permit Requirement Is a Valid Time, Place, and Manner Restriction

Under Forest Service rules, groups of seventy-five or more people gathering in a National Forest for a non-commercial purpose must acquire a special use permit in advance. Winslow argues that this requirement violates his First Amendment rights to free speech, to peacefully assemble, and to practice his religion. We find these arguments meritless.

First Amendment jurisprudence allows the government to impose reasonable "time, place, or manner" restrictions on expressive conduct in a public forum. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Such restrictions are valid, "provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a

significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id.* (citations omitted). Though Winslow disagrees, we view the Forest Service's permit requirement as a valid time, place, and manner restriction for the following reasons.

First, the rule is content-neutral. It applies to any gathering of seventy-five or more people in a National Forest, whether the gathering intends *any* speech, and irrespective of topic. *See Black v. Arthur*, 201 F.3d 1120, 1123 (9th Cir. 2000).

Second, the rule is narrowly tailored to serve the significant government interest in "protecting public health and safety, preserving National Forest lands, and allocating space among different groups and uses." *United States v. Nenninger*, 351 F.3d 340, 346 (8th Cir. 2003). Winslow argues that the Forest Service "had an opportunity to serve any interest it might have claimed," because he was generally willing to cooperate; just not willing to sign the permit. But even if that were true, "restrictions on the time, place, or manner of protected speech are not invalid simply because there is some imaginable alternative that might be less burdensome on speech." *Ward v. Rock Against Racism,* 491 U.S. 781, 797 (1989) (citation and internal quotation marks omitted). Further, the permit requirement serves the government's interests in a way that informal cooperation would not:

> [R]equiring an individual to sign a special use authorization as a representative of the group is necessary to ensure that the group will be responsible for the actions of its members as a whole, to give the authorization legal effect and to subject the group to the authorization's terms and conditions.

*United States v. Kalb*, 234 F.3d 827, 833 (3d Cir. 2000) (quoting *United States v. Masel*, 54 F. Supp.

2d 903, 919 (W.D. Wis. 1999)).

> Finally, the rule leaves ample alternative channels for communication.

> The regulation does not preclude the use of state or private property for Rainbow
> Family gatherings.  It also does not impinge upon the right of the Rainbow Family
> to meet on federal land which does not fall within Forest Service jurisdiction or to
> gather in groups made up of fewer than 75 individuals.

*Id.*

We thus sanction the Forest Service rule as a valid time, place, and manner restriction

presenting no affront to the First Amendment.

III.  Winslow's Putative Lack of Authority to Sign a Permit Application Is Irrelevant

Winslow also contends that he should not have been convicted because he did not have the

group's authority to sign a permit.  The undisputed elements of Winslow's offense are:  (1) The

defendant was engaged in a non-commercial activity on National Forest Service land; (2) more than

seventy-five people were engaged in the non-commercial activity either as participants or spectators;

and (3) the group failed to obtain a special use permit in advance of the event.  Winslow concedes

that he was engaged in a non-commercial activity on National Forest Land; that he was part of a

group of seventy-five or more people; and that neither he nor anyone else obtained a special use

permit for the event.  We need not decide here whether a defendant must also be a group leader or

contact person to be convicted under the rule because, given that ample evidence supports the district court's finding that this defendant acted as a contact person, Winslow himself would satisfy the additional element he seeks to require.

## IV. Conclusion

Winslow having presented no grounds to reverse his conviction, we affirm.

**Clay, Circuit Judge, concurring.** I concur in the majority opinion, but write separately to discuss Winslow's status as a contact person or representative for the Rainbow Family. U.S. Forest Service regulations require an individual or entity who proposes to occupy National Forest land to file a written proposal with the Forest Service or to present an oral proposal to the District Ranger or the Forest Supervisor having jurisdiction over the affected land. 36 C.F.R. § 251.54(b). As described by the Third Circuit:

> The application for a permit is a simple one-page document which essentially requires the applicant to supply information concerning the location and description of the National Forest System land upon which the activity will take place, the facilities that the applicant seeks to use, the estimated number of participants and spectators, the starting and ending times and dates for the proposed activity, and the name of an adult who will sign a special use authorization on behalf of the applicant.

*United States v. Kalb*, 234 F.3d 827, 830 (3d Cir. 2000) (citing 36 C.F.R. § 251.54). The regulations require the proponent (if not an individual) to designate a contact person and a representative for the group. *See id.* § 251.54(d)(1) (proposal for special use must provide "the name and address of the proponent's agent who is authorized to receive notice of actions pertaining to the proposal"); *id.* § 251.54(d)(2)(E) (proposal for special use must provide "[t]he name of the person or persons 21 years of age or older who will sign a special use authorization on behalf of the proponent"). If the Forest Service approves the application, the designated representative must sign the special use permit on behalf of the group. *Id.* § 251.54(g)(3)(H).

At trial, Winslow admitted to the three elements of a violation of 36 C.F.R. § 261.10(k) as specified in the majority opinion, but raised a defense that, because he is not an official of the Rainbow Family, he could not act as a contact person or representative for purposes of securing a

permit for their gathering in Ottawa National Forest on June 22, 2002. He argued that listing himself as a contact person or a representative on the special use permit application would have amounted to a false statement and exposed him to a substantial fine and/or imprisonment pursuant to 18 U.S.C. § 101. The evidence in the record, however, belies Winslow's arguments.

Since 1972, Winslow's role with the Rainbow Family has involved scouting sites and conferring with the Forest Service. Further, Winslow participated in several meetings with Forest Service personnel for the purpose of discussing site selection and logistics of the June 22, 2002 gathering. According to the testimony of Thomas Ford, Assistant Forest Supervisor at the Ottawa National Forest, Winslow dominated much of the discussion at a May 17, 2002 meeting between the Rainbow Family and the Forest Service. When the Forest Service proposed several sites for the Rainbow Family gathering, Winslow rejected all of them. According to Ford, Winslow appeared to act as a leader for the Rainbow Family. These facts support the finding that Winslow was a representative of the Rainbow Family.

Winslow's own testimony reveals that he considered himself to be a contact person for the group. He acknowledged at trial that if the Forest Service had come up with additional proposed sites after the May 17, 2002 meeting, it could have contacted him and provided him with that information. Winslow then would have provided that information to the Rainbow Family at its "Spring Council" meeting.

Because Winslow acted as both a representative and a contact person for the Rainbow Family, he would not have faced criminal prosecution for making a false statement if he had submitted a permit application that designated himself as a contact person or a representative for the

group.  As noted by the Magistrate Judge, Winslow fails to provide a plausible explanation of the difference between acting as a contact person for the Rainbow Family in meeting with the Forest Service and acting as a contact person for the Rainbow Family for a permit application.